UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLYVISION CORPORATION,

        Plaintiff,                          Lead Case No. 1:03-CV-476

v                                               Hon. Gordon J. Quist

SMART TECHNOLOGIES INC., et al,

        Defendants.
_____/

**ORDER**

        Pending before the court is Polyvision's Sixth Motion to Compel Discovery (docket no. 176). Polyvision seeks to compel production of certain documents Smart has withheld on the basis of attorney-client privilege or the work product doctrine. The court has heard oral argument, and has reviewed the documents *in camera.*

        Any consideration of this motion must begin with a discussion of the role of Smart's patent agent, Stephen Perry. It appears undisputed, and the court will take as fact for purposes of this motion, that Stephen Perry is a Canadian patent agent, who at all times relevant has also been a registered patent agent with the United States Patent and Trademark Office (USPTO). Perry is not admitted to practice as a lawyer in either Canada or the United States. In his capacity as a registered U.S. patent agent, Perry helped prepare and file the Martin 1 patent application in October 1991 (corresponding with the '263 patent issued September 5, 1995) with the USPTO on behalf of Smart, a Canadian corporation. He then did the same with the corresponding Canadian patent application

1

for Smart.  During the period in question, Perry was an employee of Sim & McBurney, a firm of patent and trademark agents in Toronto.  He has since left that organization to start his own firm.

Canadian law does not recognize a privilege protecting communications between a Canadian patent agent and his client.  *See, e.g, Santrade, Ltd. v Gen. Elec. Co.,* 150 FRD 539, 547 (E.D.N.C., 1993).  The law is certainly less clear in this country, at least where a patent agent registered with the USPTO is concerned.  Polyvision cites a number of cases that have not extended the attorney-client privilege to patent agents.  See Polyvision's Supplemental Memorandum of Law dated November 15, 2005 (docket no. 276) at 6.   On the other hand, there are also decisions, including some from district courts in this circuit and state, that have held that the attorney-client privilege does protect communications relating to patent activities in the United States if the patent agent is registered with the USPTO.  *See, Vernitron Medical Product, Inc. v Baxter Laboratories, Inc.,* 186 U.S.P.Q. 324 (Dist. N.J. 1975); *In re: Ampicillin Antitrust Litigation,* 81 FRD 377 (D.D.C. 1978); *John LaBatt Ltd. v Molson Breweries,* 898 F.Supp. 471 (E.D. Mich. 1995); *Dow Chemical Co. v Atlantic Richfield,* 227 U.S.P.Q. 129 (E.D. Mich. 1985); *Foseco Int'l Ltd. v Fireline Inc.,* 218 U.S.P.Q. 157 (N.D. Ohio) (communications between a patent agent and a client may be privileged where the proceeding is before the USPTO and the patent agent is registered with that office); *Stryker Corp. v Intermedics Orthopedics, Inc.,* 145 F.R.D. 298 (E.D.N.Y.) (attorney-client privilege equally available to communications of both registered U.S. patent agents and registered U.S. patent attorneys in order not to frustrate the congressional scheme of providing representation of both).

The rationale for affording the attorney-client privilege to registered U.S. patent agents was well set out by Judge Charles Richey in *Ampicillin* at 393.

2

Congress, in creating the Patent Office, has expressly permitted both patent attorneys and patent agents to practice before that office. The registered patent agent is required to have a full and working knowledge of the law of patents [FN29] and is even regulated by the same standards, including the Code of Professional Responsibility, as are applied to attorneys in all courts [FN30]. Thus, in appearance and fact, the registered patent agent stands on the same footing as an attorney in proceedings before the Patent Office. Therefore, under the congressional scheme, a client may freely choose between a patent attorney and a registered patent agent for representation in those proceedings. That freedom of selection, protected by the Supreme Court in [*Sperry v Florida,* 373 U.S. 379 (1963)], [FN31] would, however, be substantially impaired if as basic a protection as the attorney-client privilege were afforded to communications involving patent attorneys but not to those involving patent agents. As a result, in order not to frustrate this congressional scheme, the attorney-client privilege must be available to communications of registered patent agents [FN32].

>FN29.  See 37 C.F.R. s 1.341(c)

>FN30.  37 C.F.R. ss 1.344-1.348.

>FN31.  See n.2 Infra.

>FN32.  While undoubtedly there are patent agents who meet all the registration requirements but have not actually registered, the Court finds it necessary to limit the holding to these agents who have registered. First of all, by limiting the scope of the privilege, the Court encourages discovery, yet still allows, as did the Supreme Court in *Sperry*, the congressional intent in the patent area to be carried out, in this case the intent to have registered agents and attorneys treated equally. Secondly, the limitation ensures that the agents will be subject to professional and ethical standards, and these standards will be set by the Patent Office. Finally, the

3

> limitation results in a clearly-defined test so that all parties will know beforehand whether the privilege is available.

Therefore, where a client, in confidence, seeks legal advice from a registered patent agent, who is authorized to represent that client in an adversary process that will substantially affect the legal rights of the client, which hereby necessitates a full and free disclosure from the client to the legal representative to that the representation may be effective, the privilege will be available. This Court agrees with the Vernitron court that:

> The substance of the function, rather than the label given to the individual registered with the Patent Office, controls the determination here. In the special field of patents, there can be no question that all of the considerations which support the basis for the privilege between a client and a general practitioner handling an automobile accident claim apply with equal force to an inventor or other applicant for a patent and the representative engaged to handle the matter for him, whether he be a "patent attorney" or a patent agent," so long as he is registered by the Patent Office.

18 U.S.P.Q. at 325.

I find the latter discussed cases to be the more persuasive, particularly where the privilege arises from a congressional desire that a client be able to freely choose to be represented by either a patent attorney or a patent agent, and the privilege is limited to a patent agent registered before the USPTO. Both the registered patent agent and the limited arena in which they practice, the USPTO, are creatures of Congress, and therefore the registered patent agents should be afforded the recognition necessary to accomplish their purposes. Communications subsequent to the issuance of a patent, however, are not covered by the attorney-client privilege. The purpose of extending the privilege to a non-lawyer patent agent is to obtain advice in confidence that will substantially affect

4

the legal rights of the client, i.e., in the patent application process. There does not appear to be authority for a blanket attorney-client privilege between a registered patent agent and his client once the purpose of extending the privilege has been accomplished. *See, LaBatt, supra,* at 475. The registration of the patent agent by the USPTO provides that individual with the status of an attorney but only for a limited purpose, that is for the purpose of presenting and prosecuting patent applications before it. "Therefore, a patent agent's discussions with a client after the patent issued concerning the patent having been infringed or its legal validity if challenged in court are not privileged communications. USPTO registered patent agents cannot defend or enforce patent rights in federal courts." *Id.*

Moreover, the rationale for the protection carved out for a registered patent attorney proceeding before the USPTO does not extend to subsequent work the Canadian patent agent does for his Canadian client before the Canadian patent office. *In re: Ampicillin, supra,* at 391. Here, comity requires this court defer to Canadian law. With these principles in mind, I will address the specific documents at issue.[1]

For purposes of convenience, both parties have elected to refer to the documents by arbitrary numbers assigned to the first page of each document in question by Polyvision. In this opinion, the court will do the same.

---

[1] The fact that Perry, a registered patent agent with the USPTO who was helping his client prosecute a proceeding before the USPTO, may have performed his duties in Canada for a Canadian corporation, rather than in the U.S. for a U.S. corporation, is a distinction without any substantive difference. First, there is no requirement that the client be a U.S. corporation. Second, it is the function being performed and the qualifications of the person performing that function, rather than the place where that function is being performed, that the court should look at in determining the applicability of the privilege.

**Documents 7, 10, 11, 15, 16, 18, 21, 22, 23, 24, 25**

Except for documents 11 and 25, the remaining documents in this category were all authored by Stephen Perry and sent to Smart in regard to the U.S. patent application, and for the reasons stated above, are protected by the attorney-client privilege. Document 11 is a letter from the Smart inventor of the patent, its chairman David Martin, to Perry regarding the same U.S. patent application and is likewise protected. Document 25 is identified by the privilege log documents as a 1991 draft U.S. patent application authored by Paul Gies "containing communications between Smart and Stephen Perry" regarding the first Martin U.S. patent application. Gies was an engineering consultant to Smart in the early 1990's. Smart contends the document is protected by the attorney-client privilege. While the document does not appear to contain the purported communications, it was sent to Perry for his review and analysis and gave rise to his protected letter of July 3, 1991 (both document nos. 7 and 24 are copies of this same letter), and is also protected by the attorney-client privilege. *See, Advanced Cardiovascular Sys., Inc. v C.R. Bard, Inc.,* 144 F.R.D. 372, 374, 378 (N.D. Cal. 1992).

**Document 5**

Document 5 is a 2002 email request from Smart's in-house attorney, Barbara Munroe, to a Smart consultant and former employee, Lucian Potvin, for information pertaining to the '263 patent, which had been requested by Smart's U.S. patent counsel, and response. In-house counsel purposely wrote in three places in the email that it was a legal or legally protected communication, to afford it protection. It was also sent a year after the specter of litigation had arisen. *See* September 6, 2001 letter from Richard Bauer, Smart's U.S. patent attorney, to the CEO of Polygraph,

with a carbon copy to Smart's in-house counsel, cautioning Polygraph against infringements of the '263 patent. I find the communication to be protected by the attorney work product doctrine.

### Documents 9, 19 and 20

Smart contends documents 9, 19 and 20 are protected by the attorney-client privilege. Document 9 is a 1991 letter from Smart inventor David Martin to Stephen Perry, showing that a carbon copy went to Lucian Potvin at KTS, a company working jointly with Smart to obtain the patent. The letter itself is clearly protected by the attorney-client privilege, and I do not find under the circumstances of this case that sending a carbon copy of the letter to an entity assisting at that time in the prosecution of the same patent application defeats the privilege. This document is entitled to protection.

Documents 19 and 20 are identical copies of a 1992 letter from Potvin to David Martin at Smart. There is no indication this letter was prepared for or at the direction of a patent agent or patent attorney, nor is there any indication the letter was sent through such a person. While the letter undoubtedly pertained to a patent application, this letter was not a communication to or from one with whom the author could have privileged communications. Merely because a lawyer or a patent agent is working on a patent application does not mean that all communications between non-attorney client personnel regarding that patent are protected. It is communications to and from the attorney (or registered patent agent in this instance) that may be protected. Smart has not shown this is such a communication.

### Documents 6(b), 8, 13, 26, 28, 29, 31, 32, 34 and 35

Document 6(b) is a 2003 email from one Smart employee, David Holmgren, to another, Gerald Morrison, relating to the Martin patent. Neither Holmgren nor Morrison is an

7

attorney nor a patent agent (Trans. 86-87, 89). Smart claims in its privilege log that this document is entitled to work product protection because it was sent through in-house attorney Barbara Munroe. However, this fact is not apparent from the reading of the document itself and nothing else has been offered to support this theory. This document is not protected.

Document 8 is a January 2003 document which shows on its face it was sent from the USPTO to Smart's firm of patent lawyers, and it contains the handwritten notes of Smart's registered patent attorney, Richard Bauer. The document itself does not fall within the scope of the work product doctrine, since it is evident it was not prepared for or by Bauer in anticipation of litigation. I find, however, that the handwritten notes are protected by the work product doctrine and they may be redacted. The document itself shall be produced. *See, U.S. Postal Service v Phelps Dodge Refining Corp.,* 852 F.Supp. 156 (E.D.N.Y. 1994) (privileged portion of a document not otherwise privileged may be redacted and the document produced in redacted form); *United States v United Shoe Mach. Corp.,* 89 F.Supp. 357, 359 (D. Mass. 1950).

Document 13 is an August 2002 declaration signed by David Martin which was prepared for the USPTO regarding a patent application. Smart contends this document was prepared by its patent attorney Richard P. Bauer in anticipation of litigation and is protected by the work product doctrine. This is nowhere apparent in the document itself, nor is the contention supported elsewhere. Since the document by its very terms states what the inventor knew, rather than what Bauer knew, and there is nothing to suggest this document was prepared or kept secret in anticipation of litigation by anyone, the document finds no protection under the work product doctrine.

Documents 26 and 28 are the same document. The 2002 document states it is a search initiated by Nancy Knowlton, Smart's president and co-CEO, on behalf of Smart's lawyers,

8

for information from persons within the company pertaining to the patent. As such, it falls under the attorney-client and/or work product protection.

Documents 29 and 35 are the same document. The document is a 2003 scientific paper prepared by Holmgren. The document specifically states that it is "Privileged and Confidential" and "prepared at the request of legal counsel." I find it is protected by the work product doctrine.

Documents 31 and 34 are the same document. The document contains "Confidential" comments pertaining to the Martin patent prepared in 2003 "at the request of legal counsel." I find this document is protected by the work product privilege.

Document 32 is a scientific discussion comparing two different patents, prepared upon request of legal counsel and is protected by the work product doctrine.

### Documents 2, 3, 4, 30 and 33

Documents 2, 3 and 4 are the same document. Smart maintains this document is protected by the attorney client privilege. The document is described in the privilege log as a "2004 draft patent application containing communications between Smart and David Ruston (Smart's registered U.S. patent agent) regarding prosecution of a Smart U.S. patent application." Whether this is so cannot be determined from the document itself, since neither Smart nor Ruston is named in the document, nor is there support elsewhere in the papers for this proposition. Alternatively, Smart argues that documents 2 through 4 "are <u>directed to communications</u> between Smart and Ruston regarding the prosecution of Smart's U.S. patent application" (emphasis added). The phrase "directed to communications" is meaningless. Under these conditions, the court cannot find that this document is protected by the attorney-client privilege.

Document 30 is described in the privilege log as a 1997 report from David Martin to David Ruston regarding the "second Martin U.S. patent application". Smart maintains this document is protected by the attorney-client privilege. However, the unlabeled, unsigned, undated document does not mention Martin's name nor refer to a United States patent as opposed to a Canadian patent. The only reference in it to David Ruston suggests the document actually is directed to a third person other than Ruston ("Tell David Ruston of Sim and McBurney . . ."). Smart has failed to show that this document is protected by the attorney-client privilege as claimed.

The privilege log says document 33 is a 2003 report prepared by Kevin McLintock providing information relating to the first Martin U.S. patent which was requested by the U.S. patent counsel through Smart's in-house attorney, Barbara Munroe. In actuality, this document is an August 13, 2003 proposal addressed to the "Smart Patent Committee," describing a brand new invention by Kevin McLintock. While the Martin patent is discussed to a limited extent in the text of this proposal, there is no evidence in the document or elsewhere that it was requested by Barbara Munroe or was actually sent in confidence to an attorney to obtain legal advice. The document appears to be nothing more than a submission to unnamed members of Smart's patent committee, for an unspecified purpose. Even if it could be protected, *see In Re: Spaulding Sports Worldwide, Inc.,* 203 F.3d 800, 803 (Fed.Cir. 2000), Smart has failed to show in this instance that it was for the reason claimed.

### Waiver of Privilege

Polyvision argues that Smart waived its claim of privilege during the deposition of David Martin on August 23, 2005. During his deposition, Martin states why he chose not to set out an algorithm in his patent application. He mentions in passing that he had a discussion about this

10

question with his attorney. However, a reading of the deposition shows that he did not state what advice he sought from his attorney nor what advice, if any, his attorney gave him, nor does he give any other specifics of the conversation between he and his attorney. Merely identifying the topic of conversation is not sufficient. It is well settled that passing references to attorney-client communications, made in the course of a deposition, which do not disclose the contents of the communications, do not constitute a waiver of the privilege. *Chore-Time Equipment, Inc. v Big Dutchman, Inc.,* 151 U.S.P.Q. 170 (W.D. Mich. 1966); *Libbey Glass, Inc. v Oneida Ltd.,* 197 F.R.D. 342, 346-47 (N.D. Ohio 1999).

**Conclusion**

Polyvision's Sixth Motion to Compel Discovery (docket no. 176) will be GRANTED in part and DENIED in part. For the reasons stated above, the documents listed in the following chart may be properly withheld on the basis of the attorney-client privilege or work product doctrine, and the remaining documents at issue shall be produced forthwith:

| **Polyvision's Document Ref. No.** | **Smart's Document Ref. No.** |
|---|---|
| 5 | **PRST000155** |
| 7 | **PRST000237-PRST000238** |
| 8   [Handwritten portions only] | **PRST000325-PRST000339** |
| 9 | **PRST000743-PRST000744** |
| 10 | **PRST000745-PRST000746** |
| 11 | **PRST000747-PRST000750** |
| 15 | **PRST000841-PRST000842** |
| 16 | **PRST000843-PRST000844** |

| 18 | **PRST000848-PRST000860** |
|---|---|
| **21** | **PRST000865-PRST000871** |
| **22** | **PRST000872-PRST000873** |
| **23** | **PRST000874-PRST000875** |
| **24** | **PRST000876-PRST000877** |
| **25** | **PRST000878-PRST000901** |
| **26** | **PRST000935-PRST000936** |
| **28** | **PRST000943-PRST000944** |
| **29** | **PRST000976-PRST000970** |
| **31** | **PRST000975-PRST000977** |
| **32** | **PRST000978-PRST000981** |
| **34** | **PRST000987-PRST000989** |
| **35** | **PRST000990-PRST000993** |

**IT IS SO ORDERED.**

Dated:  March 7, 2006              /s/ Hugh W. Brenneman, Jr.
                                   Hugh W. Brenneman, Jr.
                                   United States Magistrate Judge

12